UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

KENNETH E. COOPER,

        Plaintiff/Counterclaim-Defendant,

v.                                               Civ. No. 1:24-504 MIS/GJF

CITY OF GALLUP, NM,

        Defendant/Counterclaimant,

and

REACHING HIGHER SOLUTIONS, LLC,
a/k/a REACHING HIGHER HR SOLUTIONS, LLC,
d/b/a MERCER GROUP ASSOCIATES,

        Additional Counterclaim-Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
ON REACHING HIGHER SOLUTIONS, LLC'S MOTION TO DISMISS**[1]

        THIS MATTER is before the Court on Reaching Higher Solutions, LLC a/k/a Reaching Higher HR Solutions, LLC d/b/a Mercer Group Associate's Motion to Dismiss Third Party Plaintiff City of Gallup's Third Party Complaint Under Rules 12(B)(1) and/or 12(B)(6) (the "Motion"), filed November 25, 2024. ECF 32. The Motion is fully briefed [*see* ECFs 50, 55], and the Court heard oral argument on June 2, 2025 [ECF 65]. Having considered the parties' filings and arguments as well as the relevant law, the Court recommends that the Motion be **DENIED**.

**I.**       **BACKGROUND**

        On September 13, 2024, Plaintiff Kenneth Cooper ("Plaintiff") filed an Amended Complaint alleging that his former employer, the City of Gallup ("the City"),[2] discriminated

---

[1] The undersigned files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's Order of Reference filed April 1, 2025. ECF 54.

[2] In addition, the Amended Complaint asserted the same claims against three individuals who Plaintiff described as

against him on the basis of race and age in violation of two federal statutes:  Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA").  ECF 16 at 2 ¶¶ 9–10. Plaintiff's Amended Complaint further alleges that, upon learning "that [he] had opposed unlawful employment practices with other employers," the City terminated his employment "in retaliation for his protected activity with regard to other employers." *Id*. at 4 ¶ 24.

The City answered and asserted counterclaims against both Plaintiff and a party against which Plaintiff had not asserted claims:  Reaching Higher Solutions, LLC ("RHS").[3] ECF 18 at 5–25. The counterclaims against RHS[4] allege that the City in late 2022 was looking to hire a new Director of Human Resources ("HR Director") and, in furtherance of that quest, contacted RHS in response to RHS's advertising. *Id*. at 13 ¶ 33. RHS responded to the City's inquiry, representing that its "personnel provided executive search services nationwide, underst[ood] New Mexico[,] had many clients with characteristics similar to [the City], [had] never defaulted on a contract, and [was] supported by a consortium of consultants that ha[d] assisted communities across the country with over 2000 [sic] executive-level searches." *Id*. at 13 ¶ 33 (internal quotations omitted) (brackets in original). Along with these representations, RHS offered the City a Professional

---

"officials and/or employees of the City." *See* ECF 16. The individual defendants moved to dismiss Plaintiff's claims on the basis that supervisors and employees are not personally liable for violations of Title VII or the ADEA, and because any claims against them in their official capacities were unnecessary and redundant. ECF 19–20, 51. This Court and the presiding judge agreed, and the claims against the individual defendants were dismissed. ECF 64.

[3] In its counterclaims, the City names "Reaching Higher Solutions, LLC, a/k/a Reaching Higher HR Solutions, LLC, d/b/a Mercer Group Associates" as a counterclaim defendant [ECF 18], but throughout its briefing, it refers to that entity as "Mercer" [*see* ECF 18 at 5–25]. For its part, the counterclaim defendant insists that the City contracted with Reaching Higher Solutions ("RHS") and that "Mercer Group Associates" is "not an independent legal entity" but the umbrella under which numerous consultants perform executive search functions. ECF 32 at 2. In response, the City suggests that it is inconsequential whether the counterclaim defendant is referred to as Mercer or RHS, as there has been no contention that either entity is not a real party in interest. ECF 50 at 1 n.1. For purposes of the present motion, the Court agrees, and for the sake of simplicity, it refers to the counterclaim defendant as "RHS" throughout.

[4] For purposes of RHS's Motion, the Court construes as true all allegations in the City's counterclaims against RHS. *See In re Gold Resource Corp Securities Litigation*, 776 F.3d 1103 (10th Cir. 2015).

Services Agreement ("PSA") under which RHS agreed to provide the following services to the City: advertising and soliciting applicants; winnowing applicants following review of resumes; performing initial screening through interviews and preliminary reference checks; selecting a short list of four to five candidates for consideration; performing "extensive background checks" on semifinalist candidates, including verifying the accuracy of academic credentials, past employment, financial stability, criminal history, and driving history, contacting additional references, and reviewing social media and internet content to "ensure no candidate background 'surprises' surface[d] later"; assisting in arranging interviews; and providing recommended questions for the City's interviews of selected candidates. *Id.* at 13–15 ¶ 34. Under the terms of the PSA, RHS also agreed "to defend, indemnify, and hold harmless [the City] from and against any and all claims, losses, liabilities or expenses which [arose] due to [RHS's] negligent performance of the services to be provided by [the PSA] or [RHS's] breach of its responsibilities under the [PSA]." *Id.* at 15 ¶ 35. On January 19, 2023, Gallup accepted the PSA offered by RHS. *Id.* at 15 ¶ 35.

In March and May of 2023, Plaintiff applied for the City's HR Director position, twice submitting applications and resumes detailing his education, background, credentials, and employment history. *Id.* at 15–16 ¶ 37. According to the City, Plaintiff's applications contained false and misleading representations, which he repeated in interviews conducted by RHS and the City. *Id.* at 16–18 ¶¶ 37–39, 40–42. After the City interviewed Plaintiff, it informed RHS that it had concerns about the short duration of Plaintiff's prior employment. *Id.* at 18 ¶ 45. RHS responded, indicating that no derogatory information could be found. *Id.* at 19 ¶ 45. Given this assurance, the City hired Plaintiff as its HR Director in July 2023. *Id.* at 19 ¶ 46.

The City alleges that, despite RHS's obligations under the PSA, RHS "failed to detect" numerous misrepresentations and other concerning facts about Plaintiff's prior employment and

financial history, all while assuring the City there were "no issues of a personal or professional nature that would prevent [Plaintiff] from performing the duties [of] Human Resource Director for [t]he City." *Id*. at 18 ¶ 43. To the contrary, the City insists that Plaintiff had been terminated by Wal-Mart in October 2005 and K-Mart in October 2010, the former for gross misconduct involving misappropriation of company funds, harassment of and inappropriate conduct toward subordinates, and a conflict of interest arising from an improper relationship with a female subordinate. *Id*. at 6–7, 10 ¶¶ 8, 9, 21. Moreover, Plaintiff sued these former employers for race and age discrimination. *Id*. at 7, 11 ¶¶ 10, 26. In terms of Plaintiff's financial history, the City alleges that he neglected to file New Mexico personal tax returns from 2004 through 2009, owed the United States $127,479 in federal income taxes, and had twice petitioned for bankruptcy, with the first petition being dismissed in 2010 for non-compliance with the bankruptcy plan and the second being converted to a Chapter 7 petition in 2011 due to Plaintiff's failure to comply with the Chapter 13 Plan. *Id*. at 8–11 ¶¶ 13, 18, 22, 24.

Soon after Plaintiff began working as the City's HR Director, he exhibited inappropriate behavior toward and made inappropriate comments to female members of the City's staff. *Id*. at 19 ¶ 47. As a result, the City undertook its own investigation of Plaintiff's background and learned of his discrimination suit against Wal-Mart through a Google search. *Id*. Once presented with information concerning the Wal-Mart lawsuit and its related facts, RHS admitted that it would not have presented Plaintiff as a candidate for the City's HR Director had it been aware of those facts. *Id*. Approximately three months after it hired Plaintiff as its HR Director, the City terminated him due to various misrepresentations and concealments in his applications and interviews, facts revealed by the Wal-Mart lawsuit, the behavior Plaintiff exhibited with City staff, and other circumstances. *Id*. at 19 ¶ 48. Plaintiff's discrimination suit against the City followed. ECF 1.

In response to the City's demand that RHS indemnify and defend it from Plaintiff's claims pursuant to the indemnify-and-defend provision in the PSA, RHS refused. ECF 18 at 19 ¶ 49. The City now asserts counterclaims against RHS for breach of contract, promissory estoppel, and negligence misrepresentation. *Id*. at 21–24. First, it alleges that RHS breached the parties' PSA by, among other things, failing to perform an adequate background check of Plaintiff, failing to properly interview him, failing to detect material adverse circumstances concerning his background, recommending him for consideration as the City's HR Director, and failing to honor its obligations to defend and indemnify. *Id*. at 21 ¶ 61. With respect to its promissory estoppel claim, the City alleges that it relied on RHS's promises concerning services to be performed, including that RHS would conduct competent and thorough applicant screening and would select only the most qualified applicants for interview, for which it would perform extensive background checks. *Id*. at 22 ¶ 64. According to the City, RHS's promises caused it to forgo conducting its own background checks and to view the candidates selected by RHS as reliable and qualified. *Id*. at 18 ¶ 66. Finally, in support of its negligent misrepresentation claim, the City alleges that RHS made material misrepresentations of fact concerning its competence, capabilities, and practices with no reasonable ground to believe those representations were true. *Id*. at 23 ¶¶ 71–72. The City contends that it relied on those misrepresentations when it hired Plaintiff to its detriment. *Id*. at 23 ¶¶ 73–74.

RHS answered the City's counterclaims [ECF 31] and then moved for their dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [ECF 32].

## II.    APPLICABLE LAW

### A.  Rule 12(b)(1) Standard

"[R]ipeness challenge[s], 'like other challenges to a court's subject matter jurisdiction, [are] treated as a motion to dismiss under Rule 12(b)(1).'" *Board of Cnty Comm'rs of Bernalillo*

5

*Cnty. v. Centurion Detention Health Servs.*, No. 1:23-cv-01103-KWR-KK, N2024 WL 3890422 (D.N.M. Aug. 21, 2024) (citing *Kuzava v. United Fire & Cas. Co.*, No. 17-CV-02673 CMA/NYW, 2018 WL 3633558, *2 (D. Colo. July 31, 2018); *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498-99 (10th Cir. 1995); *Keyes v. School Dist. No. 1, Denver Colo.*, 119 F.3d 1437, 1445 (10th Cir. 1997)). Ripeness has roots "both in the jurisdictional requirement that Article III courts hear only 'cases and controversies' and in prudential considerations limiting [federal courts'] jurisdiction." *Alto Eldorado P'ship v. Cnty. of Santa Fe*, 634 F.3d 1170, 1173 (10th Cir. 2011). "Ripeness doctrine addresses a *timing* question: when in time is it appropriate for a court to take up the asserted claim." *ACORN v. City of Tulsa, Okl.*, 835 F.2d 735, 738 (10th Cir. 1987). It "aims to prevent courts from entangling themselves in abstract disagreements by avoiding premature adjudication." *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012) (quotations omitted). In short, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotations omitted).

In making a ripeness determination, courts evaluate "the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration." *New Mexicans for Bill Richardson,* 64 F.3d at 1499 (quoting *Sierra Club v. Yeutter*, 911 F.2d 1405, 1415 (10th Cir.1990)). When determining fitness, the central focus is whether "the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (quoting 13A Wright, Miller & Cooper, *Federal Practice & Procedure*, § 3532 at 112). And in assessing hardship, courts typically consider "whether the challenged action creates a 'direct and immediate' dilemma for the parties.'" *Id*. (quoting *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 495 (1st Cir. 1992)).

### B. Rule 12(b)(6) Standard

A Rule 12(b)(6) motion prompts a court to assess whether a party's claims are "legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1201 (10th Cir. 2003) (citation omitted). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The Court must draw all reasonable inferences in the non-movant's favor. *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). However, mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Courts should be hesitant to dismiss a claim with prejudice under Rule 12(b)(6) and should err on the side of allowing a plaintiff to amend. *Seale v. Peacock*, 32 F.4th 1011, 1029 (10th Cir. 2022). Nevertheless, a court should dismiss a claim with prejudice when it finds that it would be futile to allow the plaintiff to amend that claim. *Id.* at 1027.

## III. PARTIES' PRIMARY ARGUMENTS

RHS argues that each of the claims the City asserts against it should be dismissed, under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). First, it contends that because the City has not yet been found liable for Plaintiff's claims, the City's indemnification claim against RHS is not ripe for adjudication and the Court therefore lacks jurisdiction over that claims. ECF 32 at 11–12; ECF 55 at 4–5. Alternatively, even if the City's claim is ripe, RHS insists that the City's breach of contract, promissory estoppel, negligence, and negligent misrepresentation claims each fail to state a claim. ECF 32 at 13–17; ECF 55 at 6–7. In RHS's view, the City's allegations in support of these claims are conclusory and, in some cases, at odds with the terms of the PSA. ECF

32 at 13–17; ECF 55 at 6–7. To the extent the Court finds any of the City's claims to state a claim, RHS urges it to order a more definite statement, describing the claims as so vague, conclusory, and speculative that it is unable to prepare defenses or identify allegations. ECF 32 at 17; ECF 55 at 7.

For its part, the City observes that RHS's Motion to Dismiss limits its ripeness challenge to the duty to *indemnify* and fails to address the City's related claim that RHS also has a duty to *defend*. ECF 50 at 6–7. The City insists that its duty to defend claim, which it describes as the "principal component of its indemnity claim," is "indisputably ripe." *Id*. at 8. According to the City, RHS has refused to defend Plaintiff's claims against the City, with the City having already incurred expenses in defending those claims.[5] *Id*. As to its duty to indemnify claim, the City suggests that even that claim is "sufficiently ripe" to survive RHS's Motion. *Id*. at 10–11. Moreover, the City observes that its claims against RHS are broader than indemnity claims. *See, e.g.*, *id*. at 16 ("As much as [RHS] would like this to be a standard indemnity case, it is not. [RHS's] promises went well beyond a promise to indemnify against liability and loss, and [its] breach has caused damages that have nothing to do with [Plaintiff's] claims."). Finally, noting that the Amended Complaint details specific contractual obligations, promises, and misrepresentations that RHS made to the City, the City contends that it plausibly states claims for breach of contract, promissory estoppel, and negligent misrepresentation. *Id*. at 13–19.

## IV.    ANALYSIS

### A.  Counterclaims v. Third-Party Claims

As a preliminary matter, the Court acknowledges that a fundamental disagreement exists as to the form the City's claims against RHS take. The City included its claims against RHS in its

---

[5] At the hearing, counsel for the City confirmed that he has billed the City's insurer for his work in defense of Plaintiff's claims, which began in approximately September 2024, and that he has been paid for his services. ECF 65 at 5.

Answer to Plaintiff's Amended Complaint, identifying them as "counterclaims." *See* ECF 18 at 5–24. In its briefing, the City explains that it joined RHS as an additional counterclaim defendant under Federal Rule of Civil Procedure 13(h), rather than as a third-party defendant under Rule 14(a), "because the primary thrust of its indemnity claim addresses the duty to defend, not the duty to indemnify." ECF 50 at 11. Despite the City's claims being pled as counterclaims, RHS refers to them as third-party claims throughout its briefing. ECFs 33, 55. It waits for its reply brief, though, to substantively contest the manner in which the City asserts claims against it. *See* ECF 65 at 4–5. Although an "argument insufficiently raised in a party's opening brief is deemed waived," *SCO Grp., Inc. v. Novell, Inc*., 578 F.3d 1201, 1226 (10th Cir. 2009), the Court has its own concerns about the manner of pleading here and concludes that the better course is to address those concerns despite RHS's waiver of the argument.

Federal Rule of Civil Procedure 13(a) and (b) contemplate compulsory and permissive counterclaims against an "opposing party," not against a person or entity not yet a party to the case. *See* Fed. R. Civ. P. 13(a)–(b). Subsection (h) of that Rule, however, permits "the addition of a person as a party to a counterclaim" subject to the authority of Rules 19 and 20. Fed. R. Civ. P. 13(h). It is subsection (h) under which the City attempts to bring its counterclaims against RHS. ECF 50 at 11. Despite having asserted counterclaims against RHS, the City offers in its response brief, as it did at oral argument, to amend its claims and to proceed against RHS under Rule 14(a) should the Court determine its claims are more appropriately asserted as third-party claims. ECF 50 at 11; ECF 65 at 6 (counsel for the City explaining that if the Court prefers the City use the more traditional third-party complaint to assert claims against RHS, it has no opposition to repleading them in that manner).

A brief discussion of the relevant portions of Rules 13 and 14 is warranted. Other courts

have observed that "[t]here is frequent 'confusion between the joinder of additional parties under Rule 13(h) and the impleader provisions of Rule 14." *Integrated Bus. Techs., LLC Netlink Sols., LLC v. Doyle*, No. 16-CV-048-TCK-FHM, 2017 WL 536839 (N.D. Okla. Feb. 9, 2017) (quoting 6 ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 1434 (3d ed. 1998)). Rules 13 and 14 operate differently: "Rule 14 'deals exclusively with the addition of third parties who may be liable to the third-party plaintiff for part or all of the damages claimed by the original plaintiff," whereas "Rule 13(h) authorizes joinder of parties 'only for the purposes of adjudicating counterclaims . . . that already have been interposed in the action or that are being asserted simultaneously with the motion to add the new parties." *Id.* (citation omitted). In other words, Rule 13(h) authorizes joinder of a new party when the same counterclaim is asserted against an existing party; it does not authorize joinder of counterclaims directed *solely* against persons or entities not parties to the original action. *See Hedge Lane Shawnee, LLC v. CTW Transp. Servs., Inc.*, No. 24-cv-2131-KHV-TJJ, 2024 WL 4751392, at *3–4 (D. Kan. Nov. 12, 2024) (citations omitted).

Here, the City does not assert the same counterclaims against Plaintiff that it asserts against RHS. *See* ECF 18 at 20–25. Consequently, the claims are not properly characterized as counterclaims under Rule 13(h). *See* Fed. R. Civ. P. 13(h); *Hedge Lane Shawnee*, 2024 WL 4751392, at *3–4. Rule 14(a), on the other hand, permits a defendant to file a third-party complaint against a nonparty "who is or may be liable to [the defendant] for all or part of the claim against [the defendant]." Fed. R. Civ. P. 14(a). As Judge Strickland of this District has observed, "[c]onsistent with the text and purpose of . . . Rule [14(a)], third-party pleading is appropriate 'only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim[s]'" in the original lawsuit. *Oldham v. Nova Mud, Inc*., No. 2:20-cv-01166 MIS/GBW, 2022 WL 1987745, at *1 (D.N.M. June 6, 2022) (quoting *Am. Zurich Ins. Co. v.*

*Cooper Tire & Rubber Co*., 512 F.3d 800, 805 (6th Cir. 2008)). Given the City's assertion that RHS is liable for damages to Plaintiff from his discrimination claims, if any, and for the defense of those claims, the claims against RHS are properly asserted as third-party claims and through a third-party complaint. *See* Fed. R. Civ. P. 14(a).

Indeed, in the Court's experience, asserting derivative indemnity claims as third-party claims is the more orthodox approach [ECF 65 at 6] and one that better conforms to the Rules. Although the City *also* alleges that RHS breached contractual duties independent of its obligations to defend and indemnify the City for Plaintiff's claims, parties are not foreclosed from *also* pleading related but non-derivative claims in a proper third-party complaint. *See King Fisher Marine Serv., Inc. v. 21st Phoenix Corp*., 893 F.2d 1155, 1156 (10th Cir. 1990) (holding that "a defendant may join with its proper third-party indemnity claim other claims it may have against the third-party defendant."). And notably, the City has forecasted a likely amendment of its counterclaims against Plaintiff due to newly-discovered information [ECF 50 at 19], and requiring the City to *also* replead its claims against RHS as third-party claims will not pose significant additional burden. *See* ECF 65 at 6.

Accordingly, the undersigned **RECOMMENDS** that the presiding judge **ORDER** the City to (1) amend its Answer and Counterclaims to assert counterclaims only against Plaintiff, and (2) file a third-party complaint to replead the claims previously asserted against RHS as counterclaims.

### B. Breach of Contract Claim

RHS challenges the City's breach of contract claim under both Rules 12(b)(1) and 12(b)(6). First, it contends that these claims are not ripe for adjudication such that the Court lacks subject matter jurisdiction over them. ECF 32 at 11–12. Alternatively, "[e]ven if the City['s] indemnity/breach of contract claims were to survive a ripeness challenge," RHS insists that they

fail to state a claim upon which relief can be granted. *Id*. at 13–14. The Court takes up each argument in turn.

      **i.   The duty to defend claim is ripe.**

In the context of its breach of contract claim, the City alleges that RHS obligated itself under the PSA "to defend, indemnify, and hold harmless [the City] from and against any and all claims, losses, liabilities or expenses which [arose] due to [RHS's] negligent performance of the services to be provided by [the PSA] or [RHS's] breach of its responsibilities under the [PSA]." ECF 18 at 15 ¶ 35. Thus, according to the City, the PSA included both a duty to indemnify and a duty to defend. *Id*. After Plaintiff asserted race and age discrimination claims against it, the City demanded RHS honor these obligations, but RHS refused. *Id*. at 19 ¶ 49. The City now asserts that RHS "has and continues to breach [the PSA] by and [sic] failing to indemnify and defend [it]" with respect to Plaintiff's claims. *Id*. at 21–22 ¶ 61.

Under New Mexico law, a duty to defend is independent from a duty to indemnify, with the former determined by the allegations asserted against the party seeking a defense. *Proassurance Specialty Ins. Co., Inc. v. Familyworks, Inc.*, 599 F. Supp. 3d 1082, 1092 (D.N.M. 2022) (J. Strickland) (citation omitted). So long as the underlying claims are "arguably within the scope" of the parties' contract, the party who promised to defend is obligated to do so. *See Am. Gen. Fire & Casualty Co. v. Progressive Cas. Co*., 799 P.2d 1113, 1116 (N.M. 1990)); *see also Proassurance*, 599 F. Supp. 3d at 1095–96 (holding that the underlying claims for negligence did not "clearly fall outside the provisions of [the] professional liability insurance policies" and, thus, were "within the meaning of the policies for purposes of [the insurer's] duty to defend").

Here, as soon as Plaintiff filed his race and age discrimination claims against the City, the City invoked the duty to defend provision in the PSA. ECF 18 at 15 ¶ 35. The City insists that

Plaintiff's discrimination claims arose due to RHS's negligent performance of and breach of the PSA, reasoning that "the one and only reason [Plaintiff] sued the City is that the City employed him, then had no choice but to terminate his employment when it learned of facts that [RHS] was paid to uncover, but failed to." ECF 50 at 9. Put another way, the City would not have employed and terminated Plaintiff were it not for RHS's negligent performance of services under the PSA.

RHS's Motion is silent as to the duty to defend component of the City's indemnity claim. *See* ECF 32; ECF 65 at 2. Instead, RHS waited until its reply brief to address this component of the indemnity claim, and even then, failed to advance a persuasive argument that no duty to defend exists, that a claim for breach of that duty has not ripened, or that Plaintiff's claims are outside the scope of the indemnity provision. *See* ECF 55 at 4–6 (arguing that there is no separate duty to defend, that there has not yet been a judicial determination that RHS breached the duty to defend, and that the claims for which the City seeks a defense are not related to the services RHS provided under the PSA); *see also SCO Grp., Inc.*, 578 F.3d at 1226 (an argument not raised in the opening brief is waived).

The Court is satisfied that the City's breach of the duty to defend claim ripened as soon as Plaintiff asserted claims against the City and the City was served with his Complaint. *See Proassurance*, 599 F. Supp. 3d at 1093 (reasoning that because the insured established the existence of four underlying state court actions, along with the general nature of those claims, the insurer's duty to defend was ripe for adjudication). In view of the broad "any and all claims" language in the parties' indemnity provision,[6] Plaintiff's claims against the City are at least arguably within its scope, as the City has plausibly alleged that Plaintiff's claims arose due to

---

[6] Although RHS suggests that the City has mischaracterized other portions of the PSA, an issue the Court cannot resolve under Rule 12(b)(6) and without reviewing the PSA, *see* ECF 32 at 13, the parties recite the same language from the PSA's indemnification provision. *Compare* ECF 18 at 15 ¶ 35, *with* ECF 55 at 5.

RHS's negligent performance of services under the PSA. ECF 18 at 15 ¶ 35, 18–20 ¶¶ 43–49.

As such, the Court **RECOMMENDS** that the Court **DENY** RHS's Motion insofar as it asserts that the City's duty to defend claim is not yet ripe.

### ii. The duty to indemnify claim is ripe.

Assessing the ripeness of the duty to indemnify claim is more difficult. RHS takes the position that the indemnity claim will not ripen unless and until the City has been found liable for Plaintiff's race and age discrimination claims. ECF 32 at 11–12. Indeed, according to RHS, New Mexico courts have "consistently held that claims for indemnity are not ripe for adjudication until the indemnitee's liability has been established in the underlying action." ECF 32 at 11 (citing *ProAssurance*, 599 F. Supp. 3d at 1093; *Valley Imp. Ass'n v. U.S. Fid. & Guar. Corp.*, 129 F.3d 1108, 1126 (10th Cir. 1997)).

The City concedes that it has not yet been subject to any judgment on or settlement of Plaintiff's claims and, further, that "indemnification connotes reimbursement for loss on account of an *established* liability." ECF 50 at 10 (citing BLACK'S LAW DICTIONARY, 837 (9th ed. 2009) (emphasis added). Still, according to the City, "numerous [c]ourts have held that a claim for indemnity asserted in the procedural context of Fed. R. Civ. P. 14(a) will be deemed sufficiently ripe." *Id.* (citing *Peyton v. Wyndham Hotels & Resorts, LLC*, No. 5:24-cv-01575-SVW-RAO, 2024 WL 5375878, 2024 U.S. Dist. LEXIS 239149, at *10–12, (C.D. Cal. Dec. 19, 2024); *Milo, LLC v. Procaccino*, No. 16-5759, 2020 WL 1855117, 2020 U.S. Dist. LEXIS 64113, at *11 (E.D. Pa. Apr. 13, 2020); *Buser v. Asset Recovery Grp., Inc.*, No. 3:13-cv-1917-SI, 2014 WL 693493, 2014 U.S. Dist. LEXIS 21841, at *3, (D. Or. Feb. 21, 2014); *Atl. Aviation Corp. v. Costas' Estate*, 332 F. Supp. 1002, 1007 (E.D.N.Y. 1971)).

The Court begins its analysis with *Proassurance*, the case from this District on which RHS

principally relies. *See* ECF 32 at 11–12; ECF 55 at 4–5. There, Judge Strickland observed that the coverage and indemnity issue presented in the insurer's federal court declaratory judgment action could not be resolved without reference to the outcome of four underlying state court actions against the insured. *See id.* Because it was "not clear to th[e] Court which, if any, of the underlying state court actions ha[d] been resolved, let alone what were there findings," Judge Strickland "decline[d]" on summary judgment "to issue an advisory opinion with respect to indemnification." *Id.* Rather, she denied as premature the summary judgment motions to the extent they related to the insurer's duty to indemnify. *Id.*

At first blush, *Proassurance* appears to bolster RHS's position that the duty to indemnify component of the City's breach of contract claim is unripe for adjudication and should be dismissed without prejudice. Upon closer inspection, however, the procedural posture of this case dictates a different result. As discussed above, the City's claims against RHS are essentially third-party claims masquerading as counterclaims. *See supra* Part IV(A). That is, the indemnity claim falls within the ambit of Rule 14(a) because, under the City's theory, RHS will be liable to the City pursuant to the indemnity provision of the PSA for any judgment in Plaintiff's favor on his claims against the City.

In a different case, Judge Strickland observed that Rule 14(a)'s "purpose 'is to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *Oldham*, 2022 WL 1987745, at *1 (citing *Am. Cooper Tire & Rubber Co.*, 512 F.3d at 805; *Patten v. Knutzen*, 646 F. Supp. 427, 429 (D. Colo. 1986)). As the Tenth Circuit put it, "[o]ne of the primary objectives of [this] third-party procedure is to avoid circuity and multiplicity of actions." *King Fisher Marine Serv.*, 893 F.2d at 1168. In light of this purpose, several circuit courts

have indicated that Rule 14(a) permits a defendant to pursue indemnity claims against a third party "even though the defendant's claim is purely inchoate—i.e., has not yet accrued under the governing substantive law—so long as the third-party defendant may become liable for all or part of the plaintiff's judgment." *Andrulonis v. United States*, 26 F.3d 1224, 1233 (2d Cir. 1994); *see also Williams v. Ford Motor Credit Co.*, 627 F.2d 158 (8th Cir. 1980) (reasoning that Rule 14(a) is designed to permit federal courts to "decide contingent liability as well as primary liability" and to "accelerate determination of the liability, if any, between the third-party plaintiff and the third-party defendant" including through "conditional judgment[s]"); *Mid-States Ins. v. Am. Fidelity & Cas. Co.*, 234 F.2d 721, 731–32 (9th Cir. 1956) (observing that Rule 14(a) operates to "avoid circuity of action" and suggesting that the "mere acceleration in time does not make the presentation of such claim premature"). Courts in the Tenth Circuit have reached similar conclusions. *See, e.g., Beights v. W.R. Grace & Co.*, 62 F.R.D. 546, 548 (W. D. Okla. 1974) ("Under Rule 14 the Third Party Complaint would appear to be authorized and not premature inasmuch as the Third Party Defendant, though not *now* liable to the Third Party Plaintiff for Plaintiff's claim against it, may be liable to it in indemnity against loss if Plaintiff succeeds against the Defendant and Third Party Plaintiff."); *see also Oldham*, 2022 WL 1987745, at *3 (concluding that the third-party plaintiff's indemnity claims were "not clearly subject to dismissal" where it was "facially plausible" that the third-party defendant "*may be required* to indemnify" the third-party plaintiff" (emphasis added)).

But even if Rule 14(a), on its face, permits inchoate third-party claims for indemnity, this is not to say that such claims are necessarily within the bounds of federal jurisdiction in terms of ripeness. *See Peyton*, 2024 WL 5375878, at *4 (reasoning that even though Rule 14(a) permits impleader of inchoate claims, "it is axiomatic that the Federal Rules of Civil Procedure do not

create or withdraw federal jurisdiction" (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978))). In determining ripeness, courts evaluate two primary factors: (1) "the fitness of the issue for judicial resolution" and (2) "the hardship to the parties of withholding judicial consideration." *New Mexicans for Bill Richardson*, 64 F.3d at 1499. With these factors in mind, the Court is persuaded by those courts that have determined that third-party claims, though contingent on the outcome of primary claims, are nevertheless ripe. *See, e.g., Peyton*, 2024 WL 5375878, at *4; *Milo, LLC*, 2020 WL 1855117, at *3; *Buser*, 2014 WL 693493, at *3. A third-party indemnity claim is "sufficiently concrete" and withholding judicial consideration over it— that is, effectively requiring it to be resolved in a separate suit—would present an unwarranted hardship to the parties, not to mention judicial inefficiency. *See Peyton*, 2024 WL 5375878, at *4.

To the extent courts have viewed Rule 14(a) as "a recognition that where procedurally it is possible to bring all related liability, indemnity, or contribution claims in a single action, the interests involved are sufficiently concrete to permit the inchoate claims," *id.*, this Court agrees. The Court is reasonably assured that, given the chance, the Tenth Circuit would conclude likewise. Though it did not address the precise jurisdictional inquiry now before the Court, the Tenth Circuit's discussion of third-party claims in *King Fisher Marine Service* is instructive and suggests it would countenance jurisdiction here so as to resolve the City's claims against RHS alongside Plaintiff's claims against the City.

> Having exercised its ancillary jurisdiction over [the third-party plaintiff's] proper rule 14(a) indemnity claim against [the third-party defendant], it was within the court's power and its discretion also to hear and decide [the third-party plaintiff's] delay damages claim . . . , given that the claim arose from the same transaction or occurrence as the principle claim by [the plaintiff] against [the defendant]. This result, true to the constitutional and statutory limits on the federal courts' jurisdiction, is also consistent with the notions of judicial economy and common sense from which the judge-made doctrine of ancillary jurisdiction took root. To confine the district court's jurisdiction here so as to exclude the added third-party claim would be to thwart the court's ability effectively to resolve an entire, logically

entwined lawsuit. We have found no evidence that Congress intended such a constraint.

*Id*. at 1171–72. Here, too, dismissing the City's indemnity claim as premature would thwart the ability to resolve that portion of a logically entwined lawsuit in the same litigation with all parties participating.

For these reasons, and given the Court's recommendation that the City be ordered to replead its claims against RHS as third-party claims, the Court **RECOMMENDS** that the presiding judge **DENY** RHS's Motion insofar as it seeks dismissal of the indemnity claim under Rule 12(b)(1).

### iii. The City plausibly states a claim for breach of contract.

RHS contends that even if the City's breach of contract claims are ripe, they fail to state a claim under Rule 12(b)(6). ECF 32 at 13. Under New Mexico law, a breach of contract claim must allege "(1) the existence of a valid and binding contract; (2) the [complaining party's] compliance with the contract and [its] performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of [its counterparty's] breach." *McCasland v. Prather*, 585 P.2d 336, 338 (N.M. Ct. App. 1978).

Here, the City's breach of contract claim derives from the PSA, which the City contends RHS breached in various ways. ECF 18 at 21 ¶ 61. Neither party having supplied the PSA itself for the Court's consideration, the Court is constrained to accept the City's rendition of its provisions as alleged in its counterclaims. ECF 65 at 2. As to those allegations, RHS complains that they "are conclusory in nature and fail to state a plausible claim for breach of contract as the PSA between RHS and the City . . . did not include any of the items alleged by the City." ECF 32 at 14. Specifically, RHS contends that, contrary to the City's characterization of the PSA, there was in fact no agreement by RHS to perform an "adequate background check," "detect material, adverse circumstances," or "to properly interview" Plaintiff. *See* ECF 32 at 13. But again, RHS

(as did the City) opted not to supply the PSA for the Court's consideration. ECF 65 at 2. Thus, to the extent RHS complains that the City's allegations misrepresent the parties' agreement, the Court may not accept those arguments without running afoul of the requirement that it *accept as true* the City's allegations at this stage of the litigation. *See Kan. Penn Gaming, LLC*, 656 F.3d at 1214 (requiring a court at the motion to dismiss stage to consider whether the non-movant's factual allegations, when assumed to be true, plausibly suggest liability by the movant).

The City's counterclaims allege the existence of the PSA and its own performance thereunder, recount numerous relevant contract terms,[7] and accuse RHS of breaching those terms by:

> failing to perform an adequate background check of [Plaintiff], failing to properly interview [Plaintiff], failing to detect material, adverse circumstances concerning [Plaintiff's] background and employment history, including his employments by Wal-Mart and Kmart and facts relating to those employments and his Bankruptcies and facts relating to those Bankruptcies, and recommending [Plaintiff] for consideration as [the City's] HR Director.

ECF 18 at 13 ¶ 34, 21 ¶ 61. Finally, the City alleges that RHS's breach of the PSA and its hiring of Plaintiff caused it to sustain damages. *Id.* at 22 ¶ 62. Drawing reasonable inferences in the City's favor, and assuming the truth of its factual allegations, the Court is satisfied that the City plausibly alleges that RHS is liable for breaching the PSA. As a result, the Court **RECOMMENDS** that RHS's Motion be **DENIED** as to the City's breach of contract claim.

---

[7] The City alleges that RHS promised and agreed, among other things, to (1) prepare a recruitment brochure to attract applicants for the HR Director position; (2) use the brochure in conducting a national search; (3) work with the City to use the best advertising options; (4) make contact with local government management and leadership personnel in RHS's database; (5) review all resumes and applications to winnow those not meeting the minimum requirements; (6) conduct an initial screening of the most promising candidates through interviews and reference checks; (7) select a short list of four to five candidates who were the most qualified; (8) conduct extensive background checks on semifinalist candidates and more intensive background checks of those identified as qualified to verify the accuracy of information related to academic credentials, past employment, financial stability, criminal history, and driving record; (9) contact additional references; (10) conduct a social media/internet review to ensure no background surprises of candidates; (11) assist in arranging interviews and providing recommended questions to be used in the interview process; and (12) defend, indemnify, and hold harmless the City from claims arising due to RHS's negligent performance of its services. ECF 18 at 13–15 ¶¶ 34 (A)–(J), 35.

### C. Promissory Estoppel

Next, RHS argues that Plaintiff's promissory estoppel claim fails to state a claim under Rule 12(b)(6). To state a claim for promissory estoppel under New Mexico law, a party must allege "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance" such that "injustice can be avoided only by enforcement of the promise." *Strata Prod. Co. v. Mercury Expl. Co.*, 916 P.2d 822, 827 (N.M. 1996) (citations omitted). In other words, the City must allege that (1) RHS made a promise that induced some action or forbearance by the City; (2) that the City reasonably and foreseeably relied on that promise; and (3) the circumstances merit enforcement. *See id.*

RHS insists that the City has not alleged sufficient facts to support its promissory estoppel claim. First, it contends that "there were no such enforceable promises made by RHS in this case." ECF 32 at 15. To the contrary, the City alleges that RHS made:

> multiple promises to [the City] concerning its services and work, including that [it] would conduct competent and thorough screening of applicants for the HR Director position, that it would competently and thoroughly assess applicants' backgrounds, work experience and personality traits, that it would select only the most qualified applicants for interview and would extensively check the background of those applications, and would conduct social media/interview reviews to ensure against subsequent revelations.

ECF 18 at 22 ¶ 64. A Rule 12(b)(6) motion is hardly the proper mechanism for disputing that these alleged promises were in fact made. Moreover, a reasonable inference can be made from the City's allegations—particularly given RHS's role as an executive search firm providing services to the City—that the City reasonably relied upon the promises RHS made in connection with the PSA.

The City goes on to allege that RHS's promises caused it to forgo conducting its own background checks and to view the candidates RHS selected as reliable and qualified for the

position for which they were being considered. *Id*. at 22 ¶ 66. In the Court's view, the City plausibly alleges that RHS's promises reasonably induced the City's forbearance to its detriment.

Finally, RHS argues that the City fails to allege a "causal connection between any purported reliance upon alleged promises made by RHS, and any damages claimed by [Plaintiff] in the underlying suit for racial/age discrimination, and/or harassment by City employees." ECF 32 at 14. Relatedly, RHS posits the City has not sustained damages because there has been no adjudication of liability against it. *Id*. RHS appears to misapprehend this component of the City's promissory estoppel claim. The City alleges that it hired Plaintiff as its HR Director when it would not have done so had RHS properly advised it of Plaintiff's relevant background. ECF 18 at 19 ¶ 46, 22 ¶ 66. The City insists that it was damaged by reliance on RHS's promises "regardless of any liability to [Plaintiff]." ECF 50 at 16. Indeed, the promises on which the City's promissory estoppel claim rests are much broader than the mere promise to indemnify. *See* ECF 18 at 22–23 ¶¶ 64–69. That Plaintiff's alleged discrimination damages are different from and causally unrelated to the damages the City allegedly incurred in relying on RHS's promises is irrelevant to the plausibility of the City's promissory estoppel claim. The City plausibly states a claim for promissory estoppel, and the Court therefore **RECOMMENDS** that RHS's Motion be **DENIED** as to that claim.

### D.  Negligent Misrepresentation

Finally, RHS complains that the City fails to state a claim for negligence or negligent misrepresentation. ECF 32 at 15. In response, the City insists that it states a cognizable claim for negligent misrepresentation. ECF 50 at 16–19. The City does not suggest that it states a standalone negligence claim, but instead acknowledges that negligent misrepresentation "is determined by the general principles of the law of negligence." *See id*. at 17 (quoting *Maxey v. Quintana*, 499 P.2d

356 (N.M. 1972)). To establish the tort of negligent misrepresentation—or as the New Mexico

Court of Appeals has referred to it, "negligence by words"—"the offending party . . . must have

breached a duty of disclosure owed to the injured party." *Saylor v. Valles*, 63 P.3d 1152 (N.M. Ct.

App. 2003) (citing *Ruiz v. Garcia*, 850 P.2d 972, 977 (N.M. 1993)). (citation omitted). The New

Mexico Court of Appeals has adopted the description of negligent misrepresentation as framed by

the Restatement of Torts (Second) § 552:

> One who, in the course of his business, profession or employment, or in any other
> transaction in which he has a pecuniary interest, supplies false information for the
> guidance of others in their business transactions, is subject to liability for pecuniary
> loss caused to them by their justifiable reliance upon the information, if he fails to
> exercise reasonable care or competence in obtaining or communicating the
> information.

*Leon v. Kelly*, No. CIV 07-0467 JB/WDS, 2008 WL 5978926, at *6 (D.N.M. Dec. 8, 2008)

(quoting *Stotlar v. Hester*, 582 P.2d 403, 406 (N.M. Ct. App. 1979)). Relying upon this articulation

of the tort, the City asserts that under the circumstances, RHS "had a duty to exercise reasonable

care or competence in vetting [Plaintiff's] application." ECF 50 at 17; *see also* ECF 18 at 23 ¶ 72

(alleging that RHS "undertook a duty of competence, care and diligence owed to [the City], and

failed to comply with that duty").

    RHS argues in conclusory fashion that the City "cannot establish that . . . a duty was owed,

and/or breached by RHS." ECF 32 at 15. But viewing the City's counterclaim through the lens of

the Restatement of Torts (Second) § 552 suggests otherwise. After all, RHS contracted with the

City to perform executive search services and thereby undertook a duty to exercise reasonable care

and competence in communicating information to the City for that purpose. *See* ECF 18 at 12-15

¶¶ 32–34; Restatement of Torts (Second) § 552. RHS suggests that the City "attempts to create

some type of professional negligence claim against [it] as an executive search firm" that is "not

recognized under existing law," but it offers no authority to support such a proposition. *See* ECF

32 at 15. The City, in contrast, points to a New Mexico Court of Appeals decision that is sufficiently analogous to bolster its own position that its negligent misrepresentation claim against RHS is cognizable. ECF 50 at 16–17 (discussing *Stotlar*, 582 P.2d at 406, in which the New Mexico Court of Appeals reasoned that a residential real estate appraiser could be held liable for negligently supplying appraisal misinformation to the buyers). Moreover, as the Court observed at oral argument, the inclusion of the indemnity provision in the PSA suggests that RHS itself must have contemplated a scenario under which the City could sue it for negligent provision of services. ECF 65 at 4. The parties' indemnity provision cuts against RHS's position that there is no applicable law under which an executive search firm can be liable for professional services.

Apart from suggesting that it owed no duty to the City, RHS advances the same challenges to the City's negligent misrepresentation claim that it advances with respect to the City's other claims: (1) that it is "conclusory in nature and fail[s] to allege sufficient facts" to state a claim, and (2) that it lacks any "causal connection to any damages claimed by the City and/or [Plaintiff] in the underlying lawsuit" where "there has been no adjudication of liability against it." ECF 32 at 15. Turning first to RHS's now-familiar causal connection argument, the Court believes that RHS fundamentally misapprehends the City's negligent misrepresentation claim just as it did the breach of contract claim. To be sure, the negligent misrepresentation claim is not premised on damages *to Plaintiff*; instead, the City insists that, independent of the damages Plaintiff alleges in his underlying discrimination claims, RHS's misrepresentations caused damages *to the City*. As before, RHS's causal connection argument is unavailing.

With respect to RHS's argument that the City's negligent misrepresentation claim is conclusory and fails to state a claim, the Court considers whether the relevant allegations track the claim's elements, which include (1) a material misrepresentation of facts by RHS; (2) that the City

relied upon those representations; (3) that RHS knew the representations were false at the time they were made or were made recklessly, and (4) that RHS intended to induce the City to rely on such representations. *See Leon*, 2008 WL 5978926, at *6 (citing *Parker v. E.I. DuPont de Nemours & Co., Inc*., 909 P.2d 1, 13 (N.M. Ct. App. 1995)).

First, according to the City, RHS "made material misrepresentations concerning its competence, capabilities, and practices, intending that [the City] rely on those misrepresentations." ECF 18 at 23 ¶ 71. As to competence, the City reports that RHS represented that it was "a consortium of seasoned senior level consultants [with] decades of [relevant] experience" and "a level of expertise . . . unmatched by other consulting firms." *Id*. at 12 ¶ 32. In addition, RHS allegedly represented that it "underst[ood] New Mexico," having served "many clients 'with characteristics similar to [the City],'" and "[had] never defaulted on a contract." *Id*. at 12 ¶ 38. As to its capacity and practices, RHS allegedly promised to perform specific services for the City and to help it locate a suitable candidate for the City's HR Director position. *Id*. at 13–15 ¶ 34. And when questions arose as to Plaintiff's employment background, RHS purportedly assured the City that "no derogatory information could be found." *Id*. at 18 ¶ 45. Yet, according to the City, RHS "lacked the competence and capacities it claimed" and "had no reasonable ground for believing [its] misrepresentations were true." *Id*. at 23 ¶ 72. Assuming the truth of the City's allegations, the Court concludes that it plausibly alleges that RHS made material misrepresentation of fact in the course of performing services for the City.

Next, the City alleges that it relied on RHS's misrepresentations to its detriment when it entered into the PSA, accepted and acted on the information RHS supplied regarding Plaintiff's background and suitability, and offered Plaintiff the position of HR Director. *Id*. at 23 ¶ 73. Indulging inferences in the City's favor, the Court finds that the City has plausibly alleged both

that it reasonably relied upon RHS's representations and that RHS intended to induce the City to so rely.

Although the City stops short of alleging that RHS *knew* its misrepresentations were false, it contends that RHS had "no reasonable ground for believing [they] were true." *Id.* at 23 ¶ 72. Effectively, the City accuses RHS of making misrepresentations with reckless disregard for their truth. *See Robey v. Parnell*, 392 P.3d 642, 652 (N.M. Ct. App. 2017); *see also* ECF 50 at 18 ("while the City cannot say at this point that [RHS] knew that its representations were false, it is clear that the representations were recklessly made"). In view of the City's allegation that relevant, adverse information about Plaintiff's background was publicly available through a "simple Google search" [*see* ECF 18 at 19 ¶ 47], the Court is satisfied that the City has plausibly stated a claim for negligent misrepresentation even without alleging that RHS knew its representations were false.

Finally, the City contends that it incurred damages on account of RHS's negligent misrepresentations because it (1) hired a "serial plaintiff" and has now found itself defending a discrimination suit by the HR Director it hired; and (2) Plaintiff's behavior and demeaning treatment of his fellow employees negatively affected the City's workplace and ultimately required the City to terminate him. ECF 50 at 18; *see also* ECF 18 at 19 ¶ 47 (alleging that after he was hired, Plaintiff "began to exhibit conduct similar to his conduct at Wal-Mart, including inappropriate comments and behavior directed to female members of the City's staff and demeaning conduct in staff and group meetings"), ¶ 48 ("In light of . . . the facts disclosed by the Wal-Mart Action [and Plaintiff's] behavior with [the City's] staff," among other things, the City "had no practicable option but to terminate [Plaintiff's] employment."). Whether the City can *prove* RHS's misrepresentations caused Plaintiff to sue the City or caused a compensable disruption to the City's work environment remains to be seen. Nevertheless, for present purposes,

the Court is satisfied that the City has plausibly alleged that it was damaged by RHS's misrepresentations.

For all of the above reasons, the Court **RECOMMENDS** that RHS's Motion be **DENIED** with respect to the City's negligent misrepresentation claim.

### E.  Request for a More Definite Statement

In the event the Court finds the City to have sufficiently pled its various causes of action, RHS alternatively requests that the City be required to re-plead its claims to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). In support of this request, RHS contends that the City's "claims are so vague, conclusory, speculative and ambiguous that RHS cannot reasonably prepare its defenses or a response or identify the allegations against it in this case." ECF 32 at 17. But curiously, RHS *did* prepare its response, having answered the City's counterclaims just before it filed the instant Motion. ECF 31.

In response, the City points to the Tenth Circuit's rationale in *Franklin v. Shelton*, 250 F.2d 92, 95-96 (10th Cir. 1957), where it upheld the denial of a Rule 12(e) motion on the basis that the "plaintiff's complaint alleged negligence and the damages sustained by it sufficiently to allow [the] defendant to file a responsive answer," and "any further particulars which [the] defendant might have needed in order to prepare for trial should have been obtained by the discovery procedures." ECF 50 at 19 (quoting *Franklin*, 250 F.2d at 95-96). Like the plaintiff's claims in *Franklin*, the Court is satisfied that the City's counterclaims here permitted RHS to sufficiently understand the allegations against it such that it could file a responsive answer. What's more, RHS's request for a more definite statement fails to comply with the basic requirements of Rule 12(e). *See* Fed. R. Civ. P. 12(e) (providing that "[t]he motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired"). RHS neither makes its request

before filing an answer, nor articulates the details it seeks with respect to each claim. The Court **RECOMMENDS** that RHS's alternative request for a more definite statement be **DENIED**.

### F. Supplemental Jurisdiction

RHS makes two related arguments for the first time in its reply: (1) the Court should decline to exercise supplemental jurisdiction over the City's claims against it because the claims "do not relate in any way to the racial and age discrimination claims" asserted by Plaintiff against the City; and (2) RHS is not a proper party to the case, as the City's claims against it are "not subject to permissive and/or required joinder" under Federal Rule of Civil Procedure 19 or 20. ECF 55 at 2–4. As explained above, a court may typically ignore arguments raised for the first time in a reply brief. *See SCO Grp., Inc.*, 578 F.3d at 122. *But see Howell v. Zions Bancorporation, N.A.*, No. 2:21-cv-00349-TC-DAO, 2021 WL 4307039, at *5 (D. Utah Sept. 22, 2021) (considering an argument related to supplemental jurisdiction raised for the first time in the defendant's reply brief, because "jurisdictional arguments are unique and may always be considered") (citation omitted). Even setting aside RHS's belated articulation of its jurisdictional argument, the Court is satisfied that the exercise of jurisdiction over the City's state law claims against RHS is proper.

First, the City's counterclaim specifies that it asserts jurisdiction on the basis of diversity jurisdiction *and* supplemental jurisdiction. *See* ECF 18 at 6 ¶ 4. As to the former, federal courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a).  RHS acknowledges that its own citizenship is diverse from that of the City. *See* ECF 31 ¶¶ 3–4; ECF 65 at 2. Moreover, the City's counterclaims allege that the City was damaged in an amount "anticipated to exceed $75,000." ECF 18 at 21–23. Thus, jurisdiction lies under 28 U.S.C. § 1332(a).

With respect to the City's second asserted basis for jurisdiction, 28 U.S.C. § 1367 provides that "in any civil action of which the district courts have original jurisdiction," such as Plaintiff's Title VII and ADEA claims here, "the district courts shall have supplemental jurisdiction over all other claims that are so related to [the original] claims . . . that they form part of the same case or controversy[,] includ[ing] claims that involve the joinder . . . of additional parties." § 1367. Supplemental jurisdiction over third-party claims is sometimes discussed in terms of "ancillary jurisdiction." For instance, the Tenth Circuit has explained that federal courts may exercise ancillary jurisdiction over third-party claims—including non-indemnity claims[8]—so long as they are logically connected to the principal claims. *King Fisher Marine Service*, 893 F.2d at 1163-72; *see also Oldham*, 2022 WL 1987745, at *1 (Judge Strickland reasoning that "[t]he court 'has ancillary jurisdiction of a defendant's proper [R]ule 14(a) claim against a third-party defendant . . . so long as the court has jurisdiction of the main claim between the original parties'") (citation omitted). "In 1990, Congress consolidated and codified the common law doctrines of ancillary and pendent jurisdiction under the title 'Supplemental jurisdiction,' in 28 U.S.C. § 1367." *Motion Control Corp. v. SICK, Inc.*, 354 F.3d 702, 705 (8th Cir. 2003); *see also Salazar v. San Juan Cnty. Det. Ctr*, 301 F. Supp. 3d 992, 1000 (D.N.M. 2017).

Here, Plaintiff's claims against the City arose from his employment with and termination by the City, and the City's claims against RHS, which the Court recommends be repleaded as third-party claims, are logically connected to Plaintiff's principal claims. Similarly, the City's claims, particularly those asserting that RHS has a duty to indemnify and a duty to defend it against Plaintiff's discrimination claims, are—in the language of § 1367—part of the same controversy. Once repleaded, ancillary jurisdiction—or supplemental jurisdiction, as it's referred to in §1367—

---

[8] As noted *supra* Part IV(A), the Tenth Circuit permits a third-party plaintiff to "join with its proper third-party indemnity claim other claims it may have against the third-party defendant." *King Fisher Marine*, 893 F.2d at 1157.

will continue to lie over the City's third-party claims against RHS.

In sum, RHS's belated arguments that this Court lacks jurisdiction over the City's claims are not well-taken.

## V.    CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that the presiding judge **ORDER** the City, within 14 days of entry of any order adopting this PFRD, (1) to amend its Answer and Counterclaims to assert counterclaims only against Plaintiff, and (2) to file a third-party complaint asserting therein the claims previously asserted against RHS as counterclaims.

The undersigned **FURTHER RECOMMENDS** that Reaching Higher Solutions' Motion to Dismiss Third Party Plaintiff City of Gallup's Third Party Complaint Under Rules 12(B)(1) and/or 12(B)(6) [ECF 32] be **DENIED.**

**SO RECOMMENDED.**

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE